UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WOODHULL, LLC<br>125 Commercial Way<br>Springboro, Ohio 45066 | : | Case No. |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **VERIFIED COMPLAINT FOR** |
| ROBERT L. MANILLA | : | **TEMPORARY RESTRAINING** |
| 5271 Schuette Drive | : | **ORDER, PRELIMINARY AND** |
| Powell, Ohio 43065 | : | **PERMANENT INJUNCTIVE** |
| | : | **RELIEF, AND DAMAGES** |
| Defendant. | : | |
| | : | |
| | : | |

Plaintiff Woodhull, LLC ("Woodhull"), for its Verified Complaint against Defendant Robert L. Manilla ("Manilla"), alleges as follows:

## NATURE OF THE ACTION

1.      This action for damages and injunctive relief arises from the breach of contractual and statutory duties not to compete or disclose confidential information owed to Woodhull by one of its former employees, Manilla.

2.      For more than seventy-three years, Woodhull provided local service and support for document imaging to customers throughout central and southwest Ohio, as well as in parts of Indiana and Kentucky. Woodhull is currently a single line provider for Ricoh, offering a complete line of integrated office solutions, and also a leader in providing solutions for electronic document storage, retrieval, and management.  Woodhull previously employed Manilla, most recently as the Director of Sales.

1

3.      On or about November 2, 2020, Manilla executed a Non-Disclosure/Non-Compete Agreement ("Agreement") in which he agreed, among other things, not to compete with Woodhull in the counties that Woodhull services and not to solicit customers, employees, or anyone else that has a business relationship with Woodhull for a period of one-year after the termination of his employment. Manilla further agreed not to disclose Woodhull's confidential, proprietary, and /or trade secret information for the duration of his employment and thereafter. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

4.      Despite that Agreement, Manilla began working for Flex Technology Group ("Flex Technology"), a direct competitor of Woodhull, almost immediately after voluntarily terminating his employment with Woodhull. Flex Technology is engaged in business throughout the United States, including Ohio.

5.      Upon information and belief, Manilla is serving in a substantially similar role at Flex Technology as he did at Woodhull and therefore, by necessity, he will be utilizing Woodhull's confidential, proprietary, and trade secret information to directly compete with Woodhull, to solicit Woodhull's customers, and to otherwise further Flex Technology's business.

6.      Accordingly, this Court's intervention is necessary in order to avoid the future harm that will befall Woodhull if Manilla's conduct is allowed to continue, and to remedy any harm that Manilla's conduct has already inflicted.

## PARTIES, JURISDICTION, AND VENUE

7.      Woodhull is an Ohio limited liability company with its principal place of business at 125 Commercial Way, Springboro, Ohio 45066.

8.      Manilla is the former Director of Sales at Woodhull and, upon information and belief, currently resides at 5271 Schuette Drive, Powell, Ohio 43065.

9. This Court has subject matter jurisdiction to hear this action, in accordance with 28 U.S.C. § 1331, because Woodhull's claims arise under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. The Court has supplemental jurisdiction over Woodhull's state law claims pursuant to 28 U.S.C. § 1367.

10. The Court has personal jurisdiction over Manilla because he lives in Ohio and his prior and ongoing actions giving rise to this cause of action occurred, and continue to occur, in Ohio. Further, the injury and harm caused to Woodhull, an Ohio limited liability company, as a result of Manilla's conduct took place in Ohio.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### A. *Woodhull's Business.*

12. Woodhull is engaged in the business of providing local service and support for document imaging to customers throughout central and southwest Ohio as well as in parts of Indiana and Kentucky.

13. Currently, Woodhull is a single line provider for Ricoh USA, the American arm of a multinational imaging and electronics company.

14. Woodhull also offers a complete line of integrated office products/services and is a leader in providing solutions for electronic document storage, retrieval, and management issues.

15. Woodhull is in a very competitive industry that is heavily reliant on customer relationships, proprietary compilations of customer information and data, and highly confidential pricing guides.

**B.**     ***Manilla's Employment with Woodhull***

16.     Between November 2, 2020 and February 3, 2023, Woodhull employed Manilla in its Dayton, Cincinnati, and Columbus offices, most recently as the Director of Sales.

17.     Throughout his employment by Woodhull, Manilla acquired detailed knowledge of Woodhull's unique operations. He also had extensive access to Woodhull's confidential and highly sensitive information—for use in the performance of his job duties—including, without limitation, its client records, the terms of Woodhull's business dealings and relationships with clients, proprietary spreadsheets and customer databases, sales and marketing plans and strategies, and other highly sensitive information.

18.     In fact, as the Director of Sales, Manilla was the most senior sales employee at Woodhull and all sales staff at all Woodhull facilities (i.e. Cincinnati, Dayton, and Columbus) reported to him, meaning that Manilla had intimate knowledge of Woodhull's entire business operation and sales strategies.

19.     In consideration of his employment with Woodhull, Manilla voluntarily executed the Agreement attached as Exhibit A on November 2, 2020, when he began his employment with Woodhull.

20.     Pursuant to the express terms of the Agreement, Manilla agreed, among other things, to the following terms:

a.     Non-Competition

It is not the intent of this Agreement to discourage employees from pursuing their own business interests, but to protect Woodhull, LLC, from losing its earned market share, its customer base, and its employees, thereby protecting the security of the Company and other Company employees. Accordingly, in signing this Agreement, you agree that upon your separation from employment, for a period of one (1) year, you will not compete with the Company by starting or buying, directly or indirectly, a competing business or by working as an employee, agent, or contractor, directly or indirectly, with a competing business. This agreement shall apply to any directly

or indirectly competing business located in any counties that Woodhull services in Ohio, Indiana, and Kentucky. The counties that Woodhull services are as follows: **Ohio**: Allen, Auglaize, Brown, Butler, Champaign, Clark, Clermont, Clinton, Darke, Delaware, Fairfield, Fayette, Franklin, Greene, Hamilton, Licking, Logan, Madison, Mercer, Miami, Montgomery Pickaway, Preble, Shelby, Union, Warren. **Kentucky**: Boone, Campbell, Kenton. **Indiana**: Dearborn, Wayne. In the future, should Woodhull expand to other counties in Ohio, Indiana, or Kentucky as service areas, these counties will become part of the Agreement without the need to physically amend this agreement.

      b.     Non-Solicitation

During your employment, and for a period of one (1) year following your separation from employment you agree:

(a) Not to directly or indirectly contact, solicit, serve, cater or provide services to any customer, client, organization or person who, or which, has had a business relationship with Woodhull during the twelve (12) month period preceding your separation and with whom you had contact or responsibility;

(b) Not to directly or indirectly influence or attempt to influence any customer, client, organization or person who has had a business relationship with the Company during the twelve (12) month period preceding your separation and with whom you had contact or responsibility to direct or transfer away any business or patronage from the Company;

(c) Not to directly or indirectly solicit or attempt to solicit any employee, agent or independent contractor to leave the Company or to contact any customer or client in order to influence or attempt to influence the directing or transferring of any business or patronage away from the Company;

(d) Not to directly or indirectly interfere with or disrupt any relationship, contractual or otherwise, between the Company, and its customers, clients, employees, independent contractors, agents, suppliers, distributors or other similar parties; and

(e) To advise any and all employers or potential employers of your obligations hereunder.

(f) For purposes of this Agreement, the term "solicit" includes a direct invitation, an indirect invitation, making inquiries, assisting an employee or customer in transferring from the Company, making derogatory comments about Woodhull (whether truthful or otherwise); or any other conduct that results in an employee, contractor, agent, customer or client ending its relationship with the Company.

      c.     Confidentiality

You further agree that during the course of your employment and thereafter, you will not disclose to anyone (except to the extent reasonably necessary for the Employee to perform his duties hereunder or as may be required by law) any confidential, proprietary and/or trade secret information ("Confidential Information") concerning the business or affairs of Woodhull, LLC. Confidential

Information includes, but is not limited to lists of customers, records relating to customers, business plans, business negotiations, market information, financial and cost information, pricing information, price sheets, sales proposals, maintenance agreements, sales strategies, and scientific and technical information (whether belonging to Woodhull, LLC or entrusted to the Company by a third party), which you acquire during the course of, or incident to the performance of your duties. You are not prohibited from disclosing information which is available to the public or which is a matter of general business knowledge or experience.

Exhibit A, ¶¶ 1-3.

21.     The Agreement expressly provides that upon the breach or threatened breach of any provision, Woodhull is entitled "to have the provisions of [the] Agreement specifically enforced by any court having jurisdiction" in addition to all other rights and remedies available in law or in equity. Exhibit A, ¶ 10. Therefore, by the Agreement's own terms, neither injunctive relief nor monetary damages could possibly cover all aspects of the past and future harm Manilla's breach of the Agreement would cause to Woodhull.

22.     If a breach is found by the Court, then Manilla agreed to be liable to and to pay Woodhull's reasonable attorney's fees incurred in connection with such legal proceedings. Exhibit A, ¶ 10.

23.     Although the duration of the non-competition and non-solicitation covenants are to be determined in general accordance with their respective sections, Manilla expressly agreed that, should he violate either of those covenants, they would be extended "for an additional period of time equal to the time that elapses from the commencement of such violation to the later of (a) the termination of such violation; or (b) the final resolution of any litigation stemming from such violation. Exhibit A, ¶ 10.

24.     Manilla also voluntarily executed a Network Computer and Communications Policy ("Policy") on November 2, 2020. A true and accurate copy of the Policy is attached hereto as **Exhibit B**.

25.     In executing that Policy, Manilla acknowledged and agreed to the following:

    a.     Data transferred, stored or communicated using [Woodhull's network and communications] resources is the property of Woodhull. Woodhull reserves the right to monitor any and all aspects of network and communication resources including email, internet access, cell phones, Blackberries, PDAs, computers, in-car devices and any other equipment deemed appropriate. The personal privacy of data created, sent, and received, downloaded or otherwise using Woodhull network or communication resources should not be expected. Even if you use a personal password or code to access these systems, all messages composed, sent or received are not private property.

    b.     Anything created on network resources may be viewed by others. When a message is deleted, it is still possible to be retrieved.

    c.     Employees are responsible for the use of network and communication resources and services in an efficient, effective, ethical, responsible and lawful manner. Violations of this policy may result in disciplinary action, up to and including possible termination, and/or legal action. The policy may be amended or revised periodically. Network and communication resources belong to Woodhull and should be used for business use.

Exhibit B, p. 1.

26.     Finally, Manilla also voluntarily executed an Acknowledgement of Receipt of Woodhull, LLC Employee Handbook ("Acknowledgement") on November 2, 2020. A true and accurate copy of the Acknowledgement is attached hereto as **Exhibit C**.

27.     Although the Acknowledgement specifically states that "the policies and statements contained in the Handbook (and any future changes) are not considered as an employee contract" and instead "serves the purpose of a guide to help improve our mutual communications;" Manilla, in executing the Acknowledgement, made clear that he understood it was his obligation to read and comply with the policies and provisions contained within the Woodhull, LLC Employee Handbook ("Handbook"). A true and accurate copy of the relevant portions of the Handbook is attached hereto as **Exhibit D**.

28.     Relevant here, the Handbook included the following policies related to Manilla's use of Woodhull's computers:

a. Woodhull Laptop Acceptance Form
  i. I understand that all laptop computers, equipment, and accessories that [Woodhull] has provided me are the property of [Woodhull]. I agree with and will adhere to all the [Woodhull Computer Policy] rules and guidelines.
  ii. I agree to return the laptop and accessories in my possession immediately upon termination or alternatively; [Woodhull] will withhold the replacement cost of the laptop/accessories from my last paycheck.
  iii. I will not use the laptop/accessories for personal use.
  iv. I understand that a violation of the terms and conditions set out in the [Woodhull Computer Policy] will result in the restriction and/or termination of my use of a [Woodhull] laptop computer, equipment and accessories and may result in further discipline up to and including termination of employment and/or other legal actions.
b. Computer and Application Software
  i. You should not read, alter or copy a file belonging to another user without first obtaining permission from the owner of the file. The ability to read, alter, or copy a file belonging to another user does not imply permission to read, alter, or copy that file.
  ii. IMPORTANT: A user's ability to access other computer systems directly or through the network does not imply a right to access those systems or to make use of those systems unless specifically authorized to do so.
c. Network and Communications Policy
  i. Employees are responsible for the use of network and communication resources and services in an efficient, effective, ethical, responsible and lawful manner. Violations of this policy may result in disciplinary action, up to and including possible termination, and/or legal action. This policy may be amended or revised periodically. Network and communication resources belong to Woodhull and should be used for business use.
  ii. Data transferred, stored or communicated using such resources is the property of [Woodhull]. [Woodhull] reserves the right to monitor any and all aspects of network and communication resources including email, Internet access, cell phones, Blackberries, PDAs, computer, in-car devices and any other equipment deemed appropriate. The personal privacy of data created, sent, and received, downloaded or otherwise using Woodhull network or communication resources should not be expected to be private. Even if you use a personal password or code to access these systems, all messages composed, sent or received are NOT private property of the employee.
d. Personal Computers and Applications
  i. You should not read, alter or copy a file belonging to another user without first obtaining permission from the owner of the file. The

> ability to read, alter, or copy a file belonging to another user does not imply permission to read, alter, or copy that file.
>
> ii.  **IMPORTANT:** A user's ability to access other computer systems directly or through the network does not imply a right to access those systems or to make use of those systems unless specifically authorized to do so.

Exhibit D, pp. 3-6.

29.  In exchange for Manilla's agreement to these policies and restrictions on his competitive conduct, Manilla received from Woodhull adequate and sufficient consideration, including, without limitation, employment and compensation as well as key employee bonuses.

### C.  *Manilla's Resignation*

30.  Manilla tendered his two-weeks' notice to Woodhull on January 24, 2023.

31.  When Manilla did so, Woodhull asked him where he would be working but Manilla refused to disclose that information and would only say that it "would not be for a competitor."

32.  Manilla was later asked directly by Woodhull Vice President Timothy Droesch whether he was going to work for Flex Technology. Manilla responded by assuring Droesch that he was not going to Flex Technology and that he would not be violating his Agreement with Woodhull. Droesch tried to press Manilla on this point and asked Manilla why he would not tell Woodhull who he would be working for if it was not going to be violating the terms of his Agreement, but all Manilla would say was that Woodhull would "find out soon enough."

33.  Based on the date of Manilla's two-weeks' notice, his last day of work should have been February 7, 2023. Manilla did not serve out his full two week notice period, however, and instead voluntarily terminated his employment with Woodhull on February 3, 2023.

34.  Prior to his termination date, but after having given his two-weeks' notice, Manilla suddenly showed a renewed energy and desire to complete a sales realignment project that had been sitting untouched for more than six months.

35.     Upon information and belief, Manilla's newfound zeal for the project was grounded in the fact that it gave him the opportunity to access sales data and information regarding lease renewal dates for all of Woodhull's customers.

36.     Lease renewals are particularly key to Woodhull's business because they represent Woodhull's best opportunity to make sales and/or increase business from existing customers. Conversely, they also represent an opportunity for Woodhull's competitors to come in and take Woodhull's business.

**D.     *Manilla's Unlawful Taking of Woodhull's Trade Secrets and Confidential Information***

37.     On January 24, 2023, the day that Manilla handed in his two-weeks' notice and after the close of business, Manilla wrongfully and unlawfully used his work computer and its access to Woodhull's e-mail network to send copies of Woodhull's payroll and commission data for the Sales Department to his personal e-mail address (bob.manilla@yahoo.com).

38.     Subsequently, on February 1, 2023—while still employed by Woodhull but after providing Woodhull with his two-weeks' notice; and, again, after the close of business—Manilla wrongfully and unlawfully used his work computer and its access to Woodhull's e-mail and network to send copies of the following to his personal e-mail address (bob.manilla@yahoo.com):

   a.     A document via Microsoft MapPoint North America 2004 that details Woodhull's various sales territories and contains specific information regarding the accounts and representatives within those sales territories;
   b.     Woodhull's Pro C53xx Sell Thru Program—which includes confidential, proprietary, and trade secret information such as sales data, pricing information, future business plans and strategies, and more;
   c.     An internal e-mail chain regarding Woodhull's January 2023 forecast and one of its clients which contained Woodhull's entire monthly sales forecast for January 2023, details regarding Woodhull's deal with the particular client mentioned, and information regarding how Woodhull's sales team fared in January 2023 as compared to the sales forecast; and
   d.     The Ricoh Learning Institute virtual course catalog which included an interactive sales training program guide, a reference card for user

management, and a PowerPoint presentation detailing the registration procedure for Ricoh's informational resources.

39.     On February 2, 2023, after sending the above illicit e-mails to himself, Manilla turned his computer and phone into Woodhull's IT and Warehouse manager, the latter of which had been completely wiped of all personal data.

40.     In addition to the above, in the months preceding his voluntary termination, Manilla also used his work computer and Woodhull e-mail address to send himself job postings, career advancement articles, and to otherwise seek out career opportunities that he knew would be in violation of his Agreement.

41.     Woodhull later found the above-referenced e-mails after conducting a search on Manilla's Woodhull e-mail account; a search that was predicated by the discovery that Manilla was working for Flex Technology as detailed below.

**E.      _Manilla's Employment with Flex Technology and Unlawful Competition_**

42.     Manilla lied when he described his post-termination plans to Woodhull and began working for Flex Technology, Woodhull's direct competitor, almost immediately after terminating his employment with Woodhull.

43.     This fact is evidence by photos from Flex Technology's annual Leaders Meeting in Costa Mesa, California which was held on February 8, 2023.

44.     Those photos were published by Industry Analysts, Inc. ("Industry Analysts"), which describes itself as "The Place for AV, Print & ECM News." _See What's Happenin' at the Flex Technology Group Leader's Meeting_, INDUSTRY ANALYSTS, INC. (Feb. 9, 2023), https://www.industryanalysts.com/020923_flex_canon_hp_konica_sharp/.

45.     Manilla is the individual in the grey sport coat with his back turned to the camera in IMG_4888 and the individual in the button-down shirt directly behind the man waving at the

camera in IMG_4960—both of which were included with the Industry Analysts article. A true and accurate copy of that article and the photos of Manilla is attached hereto as **Exhibit E**.

46.     Therefore, Manilla has been directly competing with Woodhull as of at least February 8, 2023 and has, upon information and belief, been doing so in and around Ohio, Indiana, and Kentucky.

47.     Manilla's past and current actions indicate that he intends to continue the above outlined course of conduct, which includes competition in direct violation of the Agreement and misappropriation of trade secrets in direct violation of Ohio and federal law, and which has caused, and will continue to cause, irreparable harm to Woodhull.

## FIRST CLAIM FOR RELIEF
### (Violation of the Defend Trade Secrets Act – 18 U.S.C. § 1836)

48.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

49.     Manilla violated 18 U.S.C. § 1836 by misappropriating Woodhull's trade secrets and using those trade secrets to unfairly compete with and harm Woodhull in the marketplace.

50.     Woodhull's trade secrets at issue include, but are not limited to:

   a.     Information about customers and prospective customers;
   b.     Purchasing and pricing information and strategies as well as financial data;
   c.     Product and service development information;
   d.     Information regarding Woodhull's business methods, practices and procedures, and research techniques;
   e.     Computer programs, software development, special hardware, and company manuals;
   f.     Customer service contracts; and
   g.     Marketing plans.

51.     Woodhull uses the above-detailed trade secrets in interstate commerce, namely in the provision of its products and services directed into Ohio, Indiana, and Kentucky.

52. The above-detailed trade secrets are not generally known or readily ascertainable by others, and have substantial value to competitors in the same industry.

53. Woodhull developed its trade secrets at substantial expense and with the input of significant time and effort. Manilla has enjoyed, and continues to enjoy, a significant competitive advantage in the marketplace as a result of his misappropriation of Woodhull's trade secrets.

54. Woodhull took reasonable steps to ensure the confidentiality of its trade secrets and protect against their disclosure. By way of example, and not limitation, Woodhull requires that its employees execute agreements and/or acknowledge confidentiality obligations prohibiting disclosure of Woodhull's confidential information and trade secrets. In this case, Manilla willingly executed the Agreement requiring the protection of all confidential information and non-disclosure of that information.

55. Manilla gained access to Woodhull's trade secrets during the course of his employment with Woodhull. He was obligated to maintain the secrecy of and not disclose to others Woodhull's confidential business information and trade secrets.

56. Manilla was aware of his confidentiality obligations at the time he obtained Woodhull's trade secrets and forwarded them to his personal e-mail address, and he knew that he was obtaining and forwarding those trade secrets illegally.

57. Manilla's use of Woodhull's trade secrets directly and proximately led to his competing unfairly with Woodhull, on behalf of Flex Technology, and, upon information and belief, Manilla continues to use the trade secrets he misappropriated from Woodhull to seek out and convert Woodhull's customers.

58.     Manilla's misappropriation of Woodhull's trade secrets was willful and malicious. Manilla was informed of and acknowledged the confidentiality of Woodhull's materials and yet he nevertheless misappropriated them anyway.

59.     As a direct and proximate result of Manilla's misappropriation of Woodhull's trade secrets, Woodhull has been and will continue to be, irreparably harmed, and has suffered monetary damages in an amount to be determined at trial.

60.     Pursuant to 18 U.S.C. § 1836(b)(3)(B), Woodhull is entitled to damages for actual losses and unjust enrichment caused by Manilla's misappropriation of its trade secrets.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Agreement)

61.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

62.     The Agreement is a valid and legally enforceable contract that Woodhull and Manilla entered into freely and without duress.

63.     The Agreement is reasonable in scope, and it is reasonably tailored to protect Woodhull's legitimate business interests.

64.     Manilla has willfully breached the Agreement by, among other things:

a.     Working for Flex Technology, Woodhull's direct competitor, in a counties in which Woodhull operates; and

b.     Upon information and belief directly or indirectly soliciting Woodhull's customers, clients, and employees to end their business relationship with Woodhull;

prior to the expiration of his one-year non-competition and non-solicitation obligations under the Agreement. *See* Exhibit A, ¶¶ 1-2.

65.     Manilla further willfully breached the Agreement by wrongfully taking and, upon information and belief, disclosing Woodhull's confidential, proprietary, and/or trade secret information.

66.     As a direct and proximate result of Manilla's unlawful conduct, Woodhull has and will continue to suffer immediate, substantial, and irreparable harm, including, but not limited to:

      a.      The loss of confidence and trust of Woodhull's customers, clients, and employees as well as the lowering of goodwill and loss of business reputation for Woodhull in the community as a whole;

      b.      Present economic loss, which is uncertain at this time; and

      c.      Future economic loss, which is presently incalculable.

67.     Monetary damages alone will not be sufficient to remedy all of the harm caused to Woodhull by Manilla's breaches of the Agreement.

68.     A temporary restraining order, preliminary injunction, and permanent injunction are necessary to enjoin Manilla from further violations of the provisions of the Agreement and prevent irreparable harm to Woodhull.

## THIRD CLAIM FOR RELIEF
### (Faithless Servant Doctrine)

69.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

70.     Manilla was a senior executive employee of Woodhull and most recently served as Woodhull's Director of Sales, the most senior sales position in the company.

71.     Nevertheless, while serving as Woodhull's Director of Sales, Manilla used Woodhull's resources to seek out and obtain employment with Flex Technology, a direct competitor of Woodhull that operates in counties that Woodhull currently services, which would be a clear and knowing violation of Manilla's duties to Woodhull.

72.     Upon information and belief, those actions culminated in an offer of employment with Flex Technology which predicated Manilla's voluntarily termination of his employment with Woodhull on February 3, 2023.

73.     Further, upon receiving the offer of employment from Flex Technology, Manilla spent his final days at Woodhull scouring their network and sending himself Woodhull's confidential, proprietary, and trade secret information regarding its sales and customers.

74.     Manilla's conduct was dishonest and disloyal in that he knowingly and willfully acted to wrongfully go work for a business that directly competes with Woodhull, in a county/counties that Woodhull currently services, prior to the expiration of his non-competition and non-solicitation obligations.

75.     That dishonest and disloyal conduct permeated the final months of Manilla's employment with Woodhull such that he must forgo and be disgorged of all compensation that he received for the duration of that "faithless" period.

### FOURTH CLAIM FOR RELIEF
### (Replevin)

76.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

77.     Woodhull develops and is the owner of confidential, proprietary, and/or trade secret information including, but not limited to:

    a.    Information about customers and prospective customers;
    b.    Purchasing and pricing information and strategies as well as financial data;
    c.    Product and service development information;
    d.    Information regarding Woodhull's business methods, practices and procedures, and research techniques; and
    e.    Computer programs, software development, special hardware, and company manuals.
    f.    Customer service contracts; and
    g.    Marketing plans.

78. Woodhull has the right to immediate possession of the above referenced information because Woodhull is the rightful owner of that information.

79. Upon information and belief, Manilla is wrongfully retaining some or all of the above referenced information and refusing to return it to Woodhull.

80. Accordingly, Woodhull is entitled to the immediate return of any of the above referenced information that is in Manilla's possession, custody, or control as well as any monetary damages caused by Manilla's wrongful withholding of the same.

### FIFTH CLAIM FOR RELIEF
**(Conversion)**

81. Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

82. Woodhull develops and is the owner of confidential, proprietary, and/or trade secret information including, but not limited to:

    a.    Information about customers and prospective customers;
    b.    Purchasing and pricing information and strategies as well as financial data;
    c.    Product and service development information;
    d.    Information regarding Woodhull's business methods, practices and procedures, and research techniques; and
    e.    Computer programs, software development, special hardware, and company manuals.
    f.    Customer service contracts; and
    g.    Marketing plans.

83. Woodhull has the right to immediate possession of the above referenced information because Woodhull is the rightful owner of that information.

84. Upon information and belief, Manilla has wrongfully deprived Woodhull of possession of the above referenced information by taking possession of it, using it, and refusing to return it to Woodhull.

85.     As a direct and proximate result of Manilla's conversion, Woodhull has suffered damages, including the loss of the use of the converted information and a loss of business opportunity as a result of that loss of use.

### SIXTH CLAIM FOR RELIEF
#### (Misappropriation of Trade Secrets under Ohio law)

86.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

87.     Woodhull develops and maintains highly confidential and proprietary information, including, but not limited to:

     a.    Information about customers and prospective customers;
     b.    Purchasing and pricing information and strategies as well as financial data;
     c.    Product and service development information;
     d.    Information regarding Woodhull's business methods, practices and procedures, and research techniques; and
     e.    Computer programs, software development, special hardware, and company manuals.
     f.    Customer service contracts; and
     g.    Marketing plans.

88.     Woodhull's confidential and proprietary information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, including Woodhull's competitors; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

89.     Woodhull's confidential and proprietary information is protected, in whole or in part, as a trade secret within the meaning of Ohio Rev. Code § 1333.61(D).

90.     During his employment by Woodhull, Manilla had extensive access to and knowledge of the entirety of Woodhull's confidential and proprietary information. He also used

Woodhull's confidential and proprietary information in the performance of his job responsibilities at Woodhull.

91.     Manilla has misappropriated or threatened to misappropriate Woodhull's trade secrets for use against Woodhull and for the benefit of Manilla within the meaning of Ohio Rev. Code § 1333.61(B)(2).

92.     As a direct and proximate result of Manilla's actual or threatened misappropriation of Woodhull's trade secrets, Woodhull has and will continue to suffer the above referenced immediate, substantial, and irreparable harm.

93.     Woodhull has no adequate remedy at law.

94.     Monetary damages alone will not be sufficient to remedy all of the harm caused to Woodhull by Manilla's actual or threatened misappropriation of trade secrets.

95.     A temporary restraining order, preliminary injunction, and permanent injunction are necessary to prevent Manilla's further misappropriation of trade secrets and to prevent irreparable harm to Woodhull.

### SEVENTH CLAIM FOR RELIEF
**(Unfair Competition)**

96.     Woodhull incorporates by reference all of the previous paragraphs set forth in the Verified Complaint as if fully rewritten herein.

97.     The foregoing conduct of Manilla, as described herein, constitutes an unfair method of competition under Ohio law.

98.     As a consequence of Manilla's conduct, Woodhull has, and will continue, to suffer commercial losses and damage.

## EIGHTH CLAIM FOR RELIEF
### (Tortious Interference with a Business Relationship)

99.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

100.     Through the use of Woodhull's confidential, proprietary, and trade secret information, Manilla is, upon information and belief, attempting to induce Woodhull customers to cease doing business with Woodhull in favor of Flex Technology.

101.     Manilla is also, upon information and belief, utilizing Woodhull's confidential, proprietary, and trade secret information to help Flex Technology develop marketing and sales strategies that will directly and unfairly undermine Woodhull's, thereby allowing Flex Technology to take Woodhull's potential customers as well.

102.     Manilla's conduct is improper and constitutes tortious interference with Woodhull's business relationships.

103.     As a direct and proximate result of Manilla's conduct, Woodhull has suffered, and will continue to suffer, damages in the form of lost business and lost commercial opportunities.

## NINTH CLAIM FOR RELIEF
### (Breach of Contract – Policy)

104.     Woodhull incorporates by reference all of the previous paragraphs set forth in this Verified Complaint as if fully rewritten herein.

105.     The Policy is a valid and legally enforceable contract that Woodhull and Manilla entered into freely and without duress.

106.     The Policy is reasonable in scope, and it is reasonably tailored to protect Woodhull's legitimate business interests.

107.     Manilla has willfully breached the Policy by, among other things:

    a.     Using his access to Woodhull's network and e-mail to send copies of Woodhull's confidential, proprietary, and trade secret information to his personal e-mail address; and

    b.     Utilizing his Woodhull e-mail address and, upon information and belief, his computer to actively seek out employment opportunities that he knew would violate the terms of his Agreement.

*See* Exhibit B.

108.    As a direct and proximate result of Manilla's breach of the Policy, Woodhull has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Woodhull, LLC respectfully requests that this Court issue a temporary restraining order, preliminary injunction, and permanent injunction, against Defendant Robert L. Manilla, and all others acting in concert, on its First, Second, and Sixth Claims for Relief as follows:

A.    Enforcing Manilla's obligations under his Agreement with Woodhull;

B.    Restraining and enjoining Manilla, and those acting in concert with him, from working for any competing business located in any county that Woodhull currently services, for the balance of the period dictated by the Agreement;

C.    Restraining and enjoining Manilla, and those acting in concert with him from engaging in any further acts in violation of the Agreement, including soliciting customers, clients, or employees or otherwise diverting business from Woodhull for the balance of the period dictated by the Agreement;

D.    Restraining and enjoining Manilla, and those acting in concert with him, from directly or indirectly accessing, disclosing, communicating, or otherwise using Woodhull's confidential, proprietary, and/or trade secret information—including but not limited to its customer and prospective customer databases, sales and marketing plans, and pricing/lease rates—to any other person or entity;

E.     Directing Manilla, and those acting in concert with him, to immediately return to Woodhull any confidential or proprietary information of Woodhull—including but not limited to its customer and prospective customer databases, sales and marketing plans, and pricing/lease rates—that he has in his possession, custody, or control; and

F.     Prohibiting Manilla, and those acting in concert with him, from destroying or dissipating any documents or electronically stored information including information on any computers, computer hard drives, and computer discs or drives, owned or accessed by Manilla at any time, and any video recordings, any of which contain any information related to Woodhull, any of Woodhull's past, present, or prospective customers, any of Woodhull's current or former employees, agents, or independent contractors, Manilla's employment by or resignation from Woodhull, Manilla's employment with Flex Technology, and/or any information related to Woodhull or Flex Technology whatsoever.

G.     Granting such other and further relief as the Court deems appropriate.

**FURTHERMORE**, Plaintiff Woodhull, LLC respectfully requests that this Court issue judgment in its favor and against Defendant Robert L. Manilla as follows:

A.     A Judgment in Woodhull's favor on its First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief;

B.     Award Woodhull compensatory and punitive damages, costs, expenses, and attorney fees in an amount to be determined at trial, together with pre-judgment and post-judgment interest; and

C.     Award punitive and/or exemplary damages, up to and including treble damages pursuant to O.R.C. § 1333.63(B);

D.      Award Woodhull such other and further relief as this Court finds just and

proper.

Respectfully submitted,

/s/ Glen R. McMurry
Glen R. McMurry (0082600)
Robert R. Dunlevey (0011154)
Christopher M. Wolcott (0099696)
TAFT STETTINIUS & HOLLISTER LLP
40 North Main Street, Suite 1700
Dayton, Ohio 45423
Tel: (937) 228-2838
Fax: (937) 228-2816
gmcmurry@taftlaw.com
rdunlevey@taftlaw.com
cwolcott@taftlaw.com

Attorneys for Plaintiff
Woodhull, LLC

## VERIFICATION OF COMPLAINT

STATE OF OHIO                 )
                                           ) ss:
COUNTY OF MONTGOMERY     )

I, Robert Woodhull, having first been duly sworn, depose and state that I have read the foregoing Verified Complaint and verify that the facts stated therein as they relate to this dispute are true and accurate, based on my knowledge, information, and belief.

Woodhull, LLC

By: _____

Robert Woodhull
Vice President of Business Development

SWORN TO BEFORE ME and subscribed in my presence this 21st day of February, 2023.

_____
NOTARY PUBLIC

CHRISTINE C. LAING
NOTARY PUBLIC • STATE OF OHIO
My commission expires Nov. 24, 2024